UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| CHRISTIEE ANNE HOCHSTINE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:18-cv-699-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Christiee A. Hochstine ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 13. Plaintiff also filed a reply. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 13) is **GRANTED**.

## <u>BACKGROUND</u>

On July 27, 2011, Plaintiff protectively filed a Title XVI application for a period of disability and SSI, alleging disability beginning October 15, 2010 (the disability onset date), due to: "Mental health, depression, anxiety." Transcript ("Tr.") 109). Plaintiff's application was denied initially on October 28, 2011, after which she requested an administrative hearing. Plaintiff appeared and testified at an administrative hearing on March 7, 2013. Tr. 26-41, 49-54, 55. In a

decision dated March 25, 2013, Administrative Law Judge Michael Friedman found that Plaintiff was not "disabled" within the meaning of the Social Security Act. Tr. 13-22. After the Appeals Council denied review, Plaintiff filed a civil action, and on October 27, 2016, this Court remanded the matter to the Commissioner for further administrative proceedings. Tr. 1-6, 511. Thereafter, another hearing was held on February 6, 2018, before Administrative Law Judge Melissa Lin Jones (the "ALJ") in Buffalo, New York.  Plaintiff was represented by Kelly Laga, an attorney, who appeared on behalf of Plaintiff at the hearing, as she waived her right to testify. Dawn Blythe, an impartial vocational expert ("VE"), also appeared and testified at the hearing. The ALJ issued an unfavorable decision on March 21, 2018, finding that Plaintiff was not "disabled." Tr. 451-66. Plaintiff did not file written exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her March 21, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since July 27, 2011, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: asthma, major depressive disorder and generalized anxiety disorder (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets   or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(11), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can perform simple, routine and repetitive tasks, not at a production rate pace. The claimant can have occasional interaction with supervisors and rare (meaning less than occasional but not never) interaction with the co-workers and the public. The claimant must avoid exposure to dusts, fumes, odors, gases and other pulmonary irritants;

5. No finding is made regarding the claimant's past relevant work (20 CPR   416.960(h));[1]

6. The claimant was born on December 25, 1983 and was 27 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR   416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968);

---

[1]   As explained by the Commissioner, because the evidence related to Plaintiff's past relevant work is insufficient to make an appropriate and well-informed finding at step 4, the regulations provide that adjudicators may proceed immediately to step 5. *See* Tr. 464 (citing 20 CFR 416.920(h); 77 Federal Register 43492, Expedited Vocational Assessment under the Sequential Evaluation Process).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 27, 2011, the date the application was filed (20 CFR 416.920(g)).

Tr. 451-66.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on July 27, 2011, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. *Id*. at 466.

## **ANALYSIS**

Plaintiff alleges three points of error. First, Plaintiff argues that the ALJ improperly substituted her own lay judgment in assessing Plaintiff's RFC, and therefore, the RFC was not supported by substantial evidence. *See* ECF No. 8-1 at 25-26. Next, Plaintiff argues the ALJ violated SSR 85-15 because she failed to adequately evaluate the effect of Plaintiff's ability to tolerate work stress. *See id*. at 27-28. Finally, Plaintiff claims that "the ALJ impermissibl[y] assumed that to be disabled means that one must be completely shut off from society, socialization, and the pursuit of important goals" and "should be expected to vegetate in a dark room and be excluded from all form of human contact." *Id*. at 28-29 (citing *Smith v. Califano*, 637 F.2d 968 (3d Cir.1981)). The Commissioner responds that: (1) substantial evidence supported the ALJ's conclusion that Plaintiff's medical impairments did not preclude her from all work (*see* ECF No. 13-1 at 21-23); (2) the ALJ appropriately considered and weighed the medical opinion evidence (*id*. at 24-29); and (3) the ALJ fully complied with SSR 85-15 by including restrictions in Plaintiff's RFC to offset any workplace-related stressors and demands that might have caused difficulty due to her mental impairments (*id*. at 29-31).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

## I. Medical Evidence and Other Substantial Evidence Supports the ALJ's RFC Finding.

Plaintiff alleges she is unable to work because of her mental impairments, and that despite complying with her treatment recommendations and prescribed medications, she continued to experience depression and anxiety symptoms that interfered with her ability to function. Tr. 30, 34-38. Upon review of the record, the Court finds that the ALJ thoroughly and carefully analyzed the medical evidence and the other evidence of record, and the ALJ's conclusion that Plaintiff was not as limited as she alleged is supported by substantial evidence. Tr. 461. The ALJ specifically discussed the order of remand from this Court directing the Commissioner take further action needed to comply with the administrative record, including proper evaluation of the Plaintiff's symptoms and mental limitations. Tr. 454. The thorough and careful analysis of the ALJ complied with this Court's directive.

The ALJ acknowledged that Plaintiff had a long history of psychiatric problems, including an inpatient stay in 2007 for self-harming behaviors, but in reviewing the objective evidence, the ALJ concluded that Plaintiff's statements concerning the alleged intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. Tr. 460-61. "When determining a claimant's RFC, the ALJ . . . is not required

to accept the claimant's subjective complaints without question . . . ." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted)); Social Security Ruling ("SSR") 16-3p.[2]

Plaintiff argues that the ALJ erred in giving little or partial weight to the medical opinions concerning her mental impairments, and therefore, remand is required because the ALJ improperly substituted her own lay judgment in assessing Plaintiff's RFC. *See* ECF No. 8-1 at 1, 25-26. Specifically, Plaintiff takes issue with the fact that the ALJ assessed an RFC that was less restrictive than any of the medical opinions. *Id*. at 26. The only opinion Plaintiff discusses in any detail in her brief is the opinion of Sandra Jensen, Ph.D. ("Dr. Jensen"), who conducted a consultative psychiatric evaluation on October 3, 2011. Tr. 308-11. However, the ALJ's decision indicates that she also considered the opinions of state agency psychological consultant J. Echevarria, M.D. ("Dr. Echevarria"), and psychiatric nurse practitioner Walter Warriner ("NP Warriner')[3] with respect to Plaintiff's mental limitations and the ALJ's ultimate RFC finding. Upon review of the entire record, the Court finds that the ALJ explained the weights given to each of these opinions, and her assessments were supported by substantial evidence.

First, the ALJ accorded partial weight to Dr. Jensen's opinion that Plaintiff had mild to moderate impairments making appropriate decisions, relating adequately with others, and dealing appropriately with stress, but no limitations in simple tasks, performing complex tasks with supervision, or maintaining attention, concentration, and a regular schedule. Tr. 311, 462. In weighing that opinion, the ALJ recognized that Dr. Jensen was an acceptable medical source with

---

[2] As noted by the Commissioner, effective March 16, 2016, SSR 96-7p was superseded by SSR 16-3p. *See* 81 F.R. 14166-72 (March 16, 2016), as republished at 82 F.R. 49462-68 to clarify applicability date (Oct. 25, 2017). Social Security Ruling 16-3p eliminated the use of the term "credibility" from the agency's sub-regulatory policy, and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id*. The relevant regulations, however, remain unchanged.

[3] The Court notes that, in an apparent misreading of Mr. Warriner's handwritten name on the Medical Source Statement – Mental ("MSSM") form, the ALJ's decision refers to "Walker Warriher, PMHNP-BC" as opposed to "Walter Warriner, PMHNP-BC." Tr. 463 (citing Tr. 1328, 1350).

program knowledge and a specialty in psychology who had personally examined Plaintiff. Tr. 462. However, the ALJ noted that Dr. Jensen based her opinion upon one examination. *Id*. The ALJ also observed that Dr. Jensen's opinion was internally inconsistent as she suggested some moderate limitations but concluded that Plaintiff's psychiatric issues would not interfere with her ability to function on a daily basis, especially when properly medicated. Tr. 311, 462-63. Although the ALJ found that the totality of the record did not support the degree of limitation Plaintiff alleged, the ALJ concluded that the evidence showed that Plaintiff continued to have mental limitations warranting greater restrictions than Dr. Jensen opined. Tr. 463. Thus, the ALJ accorded greater weight to the portion of Dr. Jensen's opinion suggesting moderate difficulties because it was supported by the longitudinal evidence and little weight to the portion of the opinion suggesting that Plaintiff's anxiety and depression were not severe and did not interfere with her ability to work. Tr. 310-11, 462-63. The ALJ therefore accorded partial weight to Dr. Jensen's opinion, stating that it supported a finding that Plaintiff was "not disabled." Tr. 463 (citing Tr. 310-11).

A medical source statement or formal medical opinion is not necessarily required for an ALJ to make an RFC determination. This is particularly true where the consultative examiner's opinion is inconsistent with the medical evidence. *See Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) (upholding ALJ's RFC determination where the ALJ relied on physician's findings and treatment notes). Further, "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Id*. at 90. Therefore, even if the ALJ did not credit all of Dr. Jensen's findings, the opinion largely supported the ALJ's assessment of Plaintiff's RFC. *Id*.; *see also Dennis v. Berryhill*, No. 6:16-CV-6750-MAT, 2018 WL 488942, at *6 (W.D.N.Y. Jan. 19, 2018) (consultative psychological examiner's opinion to which the ALJ

accorded some weight "also provides substantial evidence for the ALJ's RFC finding."). Although the ALJ afforded Dr. Jensen's opinion partial weight, the Court finds that the ALJ's RFC assessment is largely consistent with Dr. Jensen's opinion. *See Pellam*, 508 F. App'x at 90 (ALJ was not required to supplement the record with medical source statement where ALJ rejected the consultative examiner's opinion, but ultimately accounted in the RFC for most of the limitations assessed by the examiner). Accordingly, the Court finds no error in the ALJ's assignment of partial weight to Dr. Jensen's opinion.

The ALJ next weighed the opinion of Dr. Echevarria, who reviewed Plaintiff's file in October 2011 and concluded that her mental impairments were non-severe. Tr. 316-29, 463. The regulations provide that ALJs are to consider state agency consultants' opinions because "our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1); see also 20 C.F.R. § 416.927(e); SSR 17-2p (Federal or State agency medical or psychological consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."). Although the ALJ ultimately accorded Dr. Echevarria's opinion little weight because evidence subsequent to Dr. Echevarria's file review showed that Plaintiff's mental impairments imposed work-related limitations, the ALJ appropriately considered that opinion in formulating her RFC and in concluding that Plaintiff was capable of a reduced range of work despite her mental impairments. Tr. 316-29, 463. Thus, the ALJ's mental RFC assessment actually provided greater restrictions than those contained in Dr. Echevarria's opinion, and thus was more favorable to Plaintiff. *See Gonzalez v. Colvin*, No. 1:15-CV-00767(MAT), 2018 WL 1040250, at *5 (W.D.N.Y. Feb. 24, 2018). And while medical opinions provide important insights regarding a claimant's functioning, it is ultimately the ALJ's task to formulate an RFC assessment based on the record as

a whole. *Id.* (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

The ALJ next considered NP Warriner's opinion that Plaintiff was unable to maintain competitive employment due to marked limitations in social functioning, concentration, and episodes of decompensation, assigning the opinion little weight. Tr. 463 (citing Tr. 1326-28). In doing so, the ALJ first pointed out that although NP Warriner had a longitudinal treatment history with Plaintiff, he was not an acceptable medical source within the meaning of the regulations applicable to her claim, but instead he was an "other medical source." Tr. 463; 20 C.F.R. § 416.927(f), 20 C.F.R. § 416.902(a)(7) (providing that the list of acceptable medical sources includes nurse practitioners "only with respect to claims filed…on or after March 27, 2017"). In addition, the ALJ noted, the issue of whether an individual can work or is "disabled" is reserved to the Commissioner. Tr. 463; *see also* 20 C.F.R. § 416.927(d); *LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017).

Moreover, the ALJ explained that NP Warriner's opinion was not consistent with Plaintiff's mental healthcare treatment records. Tr. 463. As the ALJ noted, Plaintiff's progress notes showed that she had improvements in mood, was stable, had grossly normal mental status examination findings, and engaged in a wide range of activities that were not consistent with the significant limitations set forth in the MSSM form completed by NP Warriner. Tr. 463; 345-48, 402, 918, 924, 1043, 1097, 1102, 1129, 1176, 1180-81, 1330-34, 1340, 1342-43, 1350-53. Consequently, and despite NP Warriner's treating history with Plaintiff, the ALJ stated that she afforded the opinion little weight due to its overall inconsistency with the totality of the evidence. Tr. 463. Thus, the ALJ sufficiently explained her assignment of weight to NP Warriner's opinion.

*See Suttles v. Berryhill*, 756 F. App'x 77, 78 (2d Cir. 2019) (the ALJ properly considered treating providers' opinions, including "accord[ing] little weight to [a nurse practitioner's] opinions because she was not an acceptable medical source and her opinions were inconsistent with [the claimant's] medical records."); *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 346 (W.D.N.Y. 2018) (ALJ appropriately assigned "little weight" to psychiatric NP's opinion due to inconsistencies with other evidence).

The ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The ALJ did just that in this case. After considering the record as a whole, the ALJ appropriately accounted for the mental limitations she found supported by the overall record by limiting Plaintiff to simple, routine and repetitive tasks, not at a production rate pace, with only occasional interaction with supervisors and rare interaction with co-workers and the public. Tr. 460. The RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Trepanier*, 752 F. App'x at 79; *see also Monroe v. Com'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (rejecting argument that remand was required because ALJ discounted the only medical opinion such that "there was no competent medical opinion that supported the ALJ's RFC determination."). Although the ALJ did not adopt these opinions in their entirety, she adequately explained her reasons for not doing so. Accordingly, the Court finds that the ALJ did not substitute her own lay judgment for a competent medical opinion. *Wynn*, 342 F. Supp. 3d at 349 (W.D.N.Y. 2018). Therefore, Plaintiff's argument fails.

With respect to the other objective evidence, the ALJ pointed out that Plaintiff's inpatient admission in 2007 coincided with the ending of a long-term relationship with her boyfriend whom

she planned to marry but found out was cheating on her. Tr. 171, 200, 461. As the ALJ noted, Plaintiff's mental healthcare records reflected grossly normal mental status examination findings, including that she had normal thought processes and content, was cooperative and oriented in all spheres, and had normal cognitive functioning and memory. Tr. 461 (citing Tr. 390, 814, 889, 1020, 1102, 1180, 1217, 1271, 1307, 1350-53). The ALJ also recognized that Plaintiff's treatment records revealed that she was clinically stable on medication. Tr. 461 (citing Tr. 814, 889, 1020, 1102, 1180, 1217, 1271, 1350-53). In addition, the ALJ observed, those records showed that: Plaintiff's mood improved; she utilized support systems; her medications were effective, even with decreased dosage and taking them as needed; and she reported positive or cheerful mood during the time period at issue. Tr. 462 (citing Tr. 345, 346, 347, 351, 697, 918, 1056, 1331, 1347). As the ALJ noted, records from other clinicians similarly reflected grossly normal mental status findings, including the findings of consultative examiner Dr. Jensen, as well as those of Plaintiff's primary care physician, to whom she denied mood and personality changes (Tr. 462, 309-10, 362, 365, 369, 377-78, 1443). *See Marnell v. Comm. of Soc. Sec.*, No. 17-CV-6201P, 2018 WL 3620152, at *12 (W.D.N.Y. July 30, 2018) (ALJ appropriately considered the medical evidence which indicated that therapy and medication were generally effective in controlling depression and anxiety symptoms).

Moreover, as the ALJ observed, Plaintiff's treatment records also showed that her exacerbated symptoms coincided with situational stressors, including her father's 2011 liver cancer diagnosis and grieving over his subsequent death, the passing of two of her cats, and anxiety about her disability paperwork and the administrative proceeding. Tr. 462 (citing 305, 349, 387, 392, 1369). In addition, a great deal of Plaintiff's complaints about increased stressors related to conflicts with her mother and drug-addicted sister, as well as interpersonal issues with a "friend

causing drama" and another long-term friend who had a drinking problem. Tr. 344, 669, 675, 902, 906, 923-24, 929, 951, 967, 987, 1027, 1032, 1037, 1097, 1106, 1112, 1118, 1126, 1141, 1148-49, 1165, 1199, 1207, 1305, 1320, 1332-40.

"Situational stressors are not a basis for a finding of disability and may be considered when evaluating a claimant's subjective reports." *Taillon v. Comm'r of Soc. Sec.*, No. 17-CV-6812, 2019 WL 1396837, at *4 (W.D.N.Y. Mar. 28, 2019) (citing *Morgan v. Colvin*, No. 14-CV-0549, 2016 WL 3527906, at *15 (N.D.N.Y. June 23, 2016); *see also Gonzalez v. Comm'r of Soc. Sec.*, No. 6:07-CV-629, 2010 WL 55933, at *5 (N.D.N.Y. Jan. 5, 2010) (The plaintiff's "situational periods of stress" were due to family problems and financial difficulties, rather than her depressive disorder, and therefore supported the ALJ's conclusion that plaintiff's claims regarding the extent her mental condition precluded her from working were not credible.); *Townsend v. Comm'r of Soc. Sec.*, No. 17-CV-6742-FPG, 2018 WL 6697001, at *7-*8 (W.D.N.Y. Dec. 20, 2018) (ALJ observed that claimant's "anxiety was generally situational in nature, and waxed and waned depending on circumstances in life;" although there was evidence of ongoing symptoms, the record also revealed that claimant "regularly had normal thought processes, thought content, and cognition and that situational triggers—like her finances, managing her daughter, poor transportation, and issues with the father of her child—often increased her stress and anxiety."); *Jones v. Colvin*, No. 11-CV-445 MAT, 2014 WL 1976921, at *11 (W.D.N.Y. May 15, 2014) (evidence contradicted suggestion that claimant's mental symptoms were disabling; treatment records "indicate[d] that [her] complaints of depression were largely situational and triggered by stressors, such as caring for her elderly mother, and her abusive marital relationship.").

Plaintiff received outpatient mental healthcare services at WCA Health Center, including medication management and individualized therapy with Martha Blackstock, M.S. ("Ms.

Blackstock"), a licensed marriage and family therapist. Tr. 177-211, 228-307, 341-59, 386-444, 445-50, 646-1321, 1349-81. On July 7, 2011, a few weeks before her SSI application date, Plaintiff reported anxiety and depression about her finances; she was working with a job opportunity placement service but was nervous as to whether she could handle a job; and she was uncomfortable with much contact with the public. Tr. 303. On mental status examination, she was mildly anxious but focused, within normal limits, and had no suicidal ideation. *Id*. Ms. Blackstock noted that Plaintiff was "considering SSI but aware she may not be approved" *Id*. Records of her most recent sessions with Ms. Blackstock documented her reported general improvement, positive mood, and no significant major concerns, although she did mention that she worried that her mother might be continuing to give her sister money and was upset about pending internet deregulation as she relied on the internet for selling her artwork and for entertainment. Tr. 462, 1363, 1364.

The ALJ also observed that Plaintiff's reported daily activities were not entirely consistent with her allegations of disabling mental symptoms and limitations. Tr. 461. For instance, the ALJ pointed out that Plaintiff was able to tend to her personal hygiene, prepare simple meals, engage in household chores, care for pets, drive, visit with friends and family, shop, play "Dungeons & Dragons," handle finances, and watch television. Tr. 32-33, 121-31, 461, 742. In addition, the ALJ noted that Plaintiff was able to attend the Pittsburg "comic-con" street costume parade in July 2015 and reported plans to attend, and/or participate in, costume conventions and parades in 2011, 2014, and 2015, activities that were inconsistent with her alleged fear of crowds and people she did not know. Tr. 30, 34, 38, 301, 461, 829, 866, 1294, 1255, 1300. She also reportedly went on a camping trip with friends in October 2015, and reported playing "Pokemon Go" in July, August, and October 2016. Tr. 1126, 1129, 1141, 1255, 1260. The ALJ also noted Plaintiff's treatment records

referencing her job-hunting activities and her reported excitement about a job interview after her alleged disability onset date; she also told Ms. Blackstock in 2012 that she very much enjoyed her volunteer work. Tr. 307, 344-47, 398-99, 461. Moreover, as mentioned above, Plaintiff reported that she sold her artwork and costumes online to bring in some income during the relevant time period. Tr. 303, 461, 746, 792, 918, 924, 1248, 1330.

Based on the foregoing, the ALJ appropriately considered the medical evidence and other evidence of record, including Plaintiff's activities of daily living and her conservative and routine treatment history, in concluding that the record failed to support her allegation that her mental impairments rendered her incapable of a reduced range of work activity. *See Vennor v. Colvin*, No. 15-CV-6385-FPG, 2016 WL 3181171, at *5 (W.D.N.Y. June 3, 2016) (ALJ appropriately "analyzed the medical evidence and concluded that the objective findings failed to provide strong support for [the claimant]'s allegedly disabling symptoms and limitations.").

Office treatment notes from Chautauqua Medical Services in June 2017 note that Plaintiff denied depression. Tr. 1398-1400. Her affect was normal; memory intact; and symptoms of anxiety appeared to be well controlled. *Id*. Her patient health questionnaire indicated that she did not feel depressed, and the only box checked was trouble with her ability to concentrate, and her total score was 1, indicating less than minimal symptoms. Tr. 1405-06. Records from the same facility in 2016 and 2015 indicated a denial of psychiatric symptoms. Tr. 1407,1411,1416. In sum, there was ample record evidence for the ALJ to arrive at the conclusions she did.

## II.    The ALJ Did Not Violate SSR 85-15.

Plaintiff also contends that the ALJ failed to adequately evaluate the effect of her ability to tolerate stress on her ability to work as required by SSR 85-15. *See* ECF No. 8-1 at 27-28. Plaintiff claims the ALJ did not make any "particularized findings about Plaintiff's stress, the circumstances

that trigger it, and how this would specifically impact her ability to work," and therefore, according to Plaintiff, remand is required. *Id*. at 27. The Court disagrees. The ALJ's RFC assessment reflects adequate consideration of Plaintiff's stress-related limitations and is set forth "with sufficient specificity to enable the court to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

As Plaintiff correctly points out, SSR 85-15 states: "it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings," and "[t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." SSR 85-15. As a result, SSR 85-15 recognizes that "[d]etermining whether these [mentally impaired] individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult," and "requires careful consideration of the assessment of RFC," including whether the individual retains the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*. In considering whether an individual is capable of working despite any difficulties attributable to his or her mental impairments, SSR 85-15 thus "emphasizes the importance of thoroughness in evaluation on an individualized basis," and explains that "[a]ny impairment-related limitations created by an individual's response to demands of work…must be reflected in the RFC assessment." *Id*.

Here, the ALJ conducted such a thorough evaluation in accordance with SSR 85-15's guiding principles emphasizing the individualized nature of the inquiry. With respect to interacting with others, the ALJ determined that Plaintiff has a moderate limitation. The ALJ noted Plaintiff's reports of difficulties getting along with siblings and some family members and panic attacks

resulting in social isolation. Tr. 458 (citing Tr. 127-29). However, the ALJ also noted evidence in the record inconsistent with the marked levels of difficulty interacting with others alleged by Plaintiff. For example, the ALJ pointed to evidence showing that Plaintiff was comfortable during examinations and was cooperative and interactive. Tr. 458 (citing 173, 200, 244, 356, 370, 673, 1444). She also noted that Plaintiff reported being able to go out alone; shop in stores; engage in online socialization; and visit with friends. *Id*. (citing Tr. 124-26). The ALJ further noted that Plaintiff attended comic-con functions, including attending a comic-convention in Pittsburg and participating in the street parade for her online costume business, and did volunteer work. *Id*. (citing Tr. 303,345-46, 1294). The ALJ also pointed to medical evidence and opinions from Drs. Jensen and Echevarria. Dr. Jensen reported that Plaintiff was cooperative and responsive, and her manner of relating, social skills, and overall presentation were adequate. *Id*. (citing Tr. 309). Dr. Echevarria opined that Plaintiff would have moderate impairments relating adequately with others. *Id*. (citing Tr. 328). Thus, the ALJ's finding of moderate limitations regarding Plaintiff's ability to interact appropriately with others was supported by substantial evidence in the record.

To account for the limitations attributable to Plaintiff's severe mental impairments, including the finding that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, the ALJ determined that Plaintiff could perform simple, routine and repetitive tasks, not at a production rate pace. Tr. 458, 460. The ALJ also accounted for the difficulties in social functioning she found to be consistent with the overall record by limiting Plaintiff to only occasional interaction with supervisors and rare (meaning less than occasional, but not never) interaction with co-workers and the public. Tr. 458, 460. Although the ALJ did not specifically use the word "stress" in the RFC finding, she imposed specific restrictions as part of Plaintiff's RFC to offset any workplace-related stressors and demands with which Plaintiff might have

difficulty as a result of her mental impairments, and appropriately translated the mental limitations she found to be supported by the record into concrete, work-related terms to address the impact of Plaintiff's mental impairments on her ability to work. Tr. 460. *See* SSR 96-8p. An RFC determination may adequately account for a claimant's stress-related limitations even without explicitly referencing stress limitation. *See Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at *4 (W.D.N.Y. Nov. 26, 2018) (citing *Cosme v. Colvin*, 2016 WL 4154280, *13 (W.D.N.Y. 2016) (finding that the ALJ's RFC finding "adequately accounted for [claimant's] limitations, including any limitations dealing with stress"; "[t]he ALJ's finding explicitly required positions involving unskilled work that did not require any contact with coworkers or the public and only limited contact with supervisors. This conclusion is consistent with both [medical opinions] that [claimant] had significant difficulties interacting with others, but was otherwise able to perform simple work independently"). The record in this case reflects that, in assessing work-related mental limitations as a part of the RFC finding, the ALJ considered whether Plaintiff "w[ould] be able to adapt to the demands or 'stress' of the workplace" despite the difficulties attributable to her mental impairments. Tr. 457-64.

Based on the foregoing, and considering the record as a whole, the Court finds that the ALJ complied with SSR 85-15's directive that "[a]ny impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." SSR 85-15; *see, e.g., Reyes v. Colvin*, No. 14-CV-734-JTC, 2016 WL 56267, at *6 (W.D.N.Y. Jan. 5, 2016) ("In the court's view, although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations, as well as his comprehensive consideration of the hearing testimony, objective medical evidence, and

treating and consultative medical source opinions, represents the kind of thorough, individualized mental RFC evaluation contemplated by SSR 85-15 and the overall requirements of the Social Security regulations and rulings."). Accordingly, Plaintiff is not entitled to reversal of the Commissioner's determination, or remand for further proceedings, for any alleged failure to comply with SSR 85-15.

### III.    The ALJ Did Not "Stigmatize" Mental Disability, As Plaintiff Claims.

Finally, Plaintiff argues that the ALJ impermissibly assumed that to be disabled "means that one must be completely shut off from society, socialization, and the pursuit of important goals" and "should be expected to vegetate in a dark room and be excluded from all form of human contact." *See* ECF No. 8-1 at 28-29. This argument makes little sense. Despite Plaintiff's contention, however, the record establishes that the ALJ appropriately considered the evidence of Plaintiff's reported activities in concluding that the overall record failed to support her allegations of disabling anxiety and social limitations. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) ("The ALJ's conclusion is also consistent with the claimant's own account of his participation in a range of daily activities during the period in question, including cleaning, cooking, driving, picking up his son at school, reading, shopping, as well as visiting friends and family."); *Kennedy v. Astrue*, 343 F. App'x 719, 720–21 (2d Cir. 2009) (affirming ALJ's conclusion that claimant was not disabled; noting that she told her doctor that she was looking for work); *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)).

Plaintiff's reliance on *Doldan v. Colvin*, Civ. No. 1:13-cv-00854-MAT-LGF, ECF No. 20, to support her argument is misplaced, as the facts in *Doldan* are distinguishable from the facts in this case. In *Doldan*, the ALJ found that plaintiff's testimony that he "did not utilize special-education services in college" was "very admirable and an indication that [he did] not want to be considered disabled, as he [was] trying his best to become a productive member of society." *Doldan*, Civ. No. 1:13-cv-00854-MAT-LGF, ECF No. 20 at 13 (internal citations omitted). As Judge Telesca explained, the Court was "troubled" by this statement for several reasons, but primarily because it was improper for the ALJ to suggest that "to be adjudicated disabled is to carry stigma, and that individuals who are disabled cannot "become [] productive member[s] of society." *Id*. at 14. In this case, the ALJ did not even remotely suggest that "to be adjudicated disabled is to carry stigma." *Id*. at 14. As noted above, the record establishes that Plaintiff performed a wide range of activities, including participating in comic-con functions, promoting her online costume business, and doing volunteer work, and the ALJ properly considered these activities, along with other evidence in the record as a whole, failed to support Plaintiff's allegations of disabling anxiety and social limitations.

In sum, the record reflects that the ALJ conducted a proper evaluation of Plaintiff's mental health impairments, and her RFC assessment was based on substantial evidence. *See* 42 U.S.C. § 405(g); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The question is not whether there is substantial evidence to support Plaintiff's position, but whether there is substantial evidence to support the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). The Court, accordingly, finds no error in the ALJ's determination that Plaintiff is not disabled.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE